United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION as Receiver for  SONOMA
VALLEY BANK,

                Plaintiff,

    v.

MELVIN J. SWITZER, SEAN C. CUTTING
AND BRIAN MELLAND,

                Defendants.
_____/

No. : 3:13-CV-03834-RS

**ORDER DENYING MOTIONS TO
DISMISS**

## I.   INTRODUCTION

After assuming receivership for Sonoma Valley Bank ("SVB"), the Federal Deposit
Insurance Corporation ("FDIC") brought this action against three of its former officers and
directors, alleging that their actions in reviewing and approving a series of loans between 2006 and
2008 resulted in approximately $12 million in losses to the bank.  Defendants now move to dismiss
the complaint, claiming protection under the business judgment rule, failure to state a claim, and
improper pleading.  Pursuant to Civil Local Rule 7-1(b), defendants' motions to dismiss were found
suitable for disposition without oral argument.  For the following reasons, defendants' motions are
denied.

United States District Court

For the Northern District of California

## II.  BACKGROUND[1]

SVB opened in 1988, serving local residents and providing loans to small and medium-sized businesses and high income individuals in and around Sonoma, California.  The three named defendants, Sean Cutting, Melvin Switzer, and Brian Melland, were all integrally involved with the bank, each holding important positions during their tenure.  Switzer worked at SVB for over twenty years, during which he served as President, Chief Executive Officer, and Chairman of the Board.  Cutting worked at SVB for seven years and held a number of titles, including Chief Lending Officer, President, and Chief Executive Officer.  Melland also worked for SVB for seven years and at one point held the title of Vice President.

Beginning in 2005, SVB significantly expanded its commercial real estate portfolio.  Many of the loans SVB extended to fund commercial real estate projects and ventures involved one developer in particular, referred to in the complaint as "Borrower A."  Between 2006 and 2008, SVB extended ten loans and a line of credit to Borrower A (collectively referred to as the "Loss Transactions"), which the FDIC alleges cost SVB $12 million.

As recounted in the complaint, SVB followed certain procedures with each of its loans.  First, an underwriter—in this instance, Melland—evaluated borrows' eligibility and recommended to the bank's Management Loan Committee ("MLC") whether the application should be approved.  At the time most or all of the Loss Transactions received approval the MLC consisted solely of the bank's president and its chief lending officer, Switzer and Cutting respectively.  The MLC was responsible for day-to-day implementation, administration, and monitoring of SVB's loan policy and had authority to approve loans up to a certain amount consistent with that policy.  Any loan in excess of the loan officers' approval limits or that required any exception to that policy—including each of the Loss Transactions—had to be presented to the seven-member Board Loan Committee ("BLC") for final approval.  During all relevant times, Cutting was a member of the BLC.

Throughout most, if not all, of the period during which the Loss Transactions were approved, the banks' loan policy established the criteria upon which loan applications were reviewed and approved.  Among other things, the loan policy specified certain criteria to be

---

[1] All factual allegations from the complaint are taken as true for purposes of this motion to dismiss.

analyzed in the course of a loan application and provided that the amount of loans to a single

borrower was not to exceed 90 percent of the legal lending limit for loans to one borrower.

(Complaint ¶ 23).  According to the FDIC, defendants violated these and other provisions of the

loan policy in extending credit to Borrower A in the course of the Loss Transactions.

The FDIC, as receiver for SVB, brings this suit under state and federal law against the

defendants for ordinary negligence, gross negligence, and breach of fiduciary duty.  Defendants

Switzer and Cutting, jointly, and Melland, individually, move to dismiss.  For the reasons explained

below, this motion is denied.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a)(2).  While "detailed factual allegations are not required," a

complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic v. Twombly*, 550 U.S. 544,

570 (2007)).  A claim is facially plausible "when the pleaded factual content allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This

standard asks for "more than a sheer possibility that a defendant acted unlawfully." *Id.*  The

determination is a context-specific task requiring the court "to draw on its judicial experience and

common sense." *Id*. at 679.

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

tests the legal sufficiency of the claims alleged in the complaint.  *See Parks Sch. of Bus., Inc. v.

Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal under Rule 12(b)(6) may be based on

either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a

cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

When evaluating such a motion, the court must accept all material allegations in the complaint as

true, even if doubtful, and construe them in the light most favorable to the non-moving party.

*Twombly*, 550 U.S. at 570.  "[C]onclusory allegations of law and unwarranted inferences," however,

"are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy

Co.,* 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Twombly*, 550 U.S. at 555 ("threadbare recitals of

the elements of the claim for relief, supported by mere conclusory statements," are not taken as true).

IV. DISCUSSION

A.  Business Judgment Rule

As an initial matter, Cutting and Switzer argue that the FDIC does not plead facts sufficient to rebut their immunity under California's business judgment rule.  Under California law, however, the business judgment rule is an affirmative defense "not properly raised at the pleading stage." *Eldridge v. Tymshare, Inc.,*186 Cal. App. 3d 767, 777 (1986).  "[R]uling on the applicability of the business judgment rule is peculiarly a question of fact, wholly inappropriate for consideration on a motion to dismiss*." Fed. Sav. and Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1064 (N.D. Cal. 1998).  Defendants do not provide any reason to depart from the general rule in this case.  In any event, California's business judgment rule applies only to corporate directors and not to officers like Cutting and Switzer.  *See* Cal. Corp. Code § 309(a).

B.  Causation

All three defendants argue that the FDIC's claims for negligence and breach of fiduciary duty must be dismissed for failure to plead sufficient facts going to causation.  The elements of a negligence claim are: "(1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury."  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  In order to satisfy the proximate cause requirement, the FDIC need only plead facts sufficient to support the inference that defendants' conduct was a "substantial factor" in causing the loss.  *See Rutherford v. Owens-Illinois, Inc.,* 16 Cal. 4th 953, 958 (1997).  It alleges that, among other things, defendants acted unreasonably by failing to investigate material facts, exercise appropriate care, or engage in reasonable inquiry in the course of evaluating loans to Borrower A.  These averments are sufficient to meet the FDIC's burden at this stage in the proceedings.  The fact that others were involved in the lending process does not shield defendants from liability.  *See Am. Motorcycle Assn. v. Sup. Ct.*, 20 Cal.3d 578, 586 (1978) ("A tortfeasor may not escape this responsibility simply because . . . other negligent conduct [] may also have been a cause of the injury.").

**United States District Court**
For the Northern District of California

C.  Duplicative Claims

A party may plead as many separate claims as it can, provided that the claims are pleaded in compliance with Rule 11.  Fed. R. Civ. P. 8(d)(2); *see Molsbergen v. United States*, 757 F.2d 1016, 1018 (9th Cir. 1985).  Rule 8 provides for a liberal pleading standard.  To the extent there is overlap in the legal theories the FDIC chooses to pursue in this case, it may maintain them as alternate theories.  *See Molsbergen*, 757 F.2d at 1019.

Cutting and Switzer argue that the FDIC's claims for breach of fiduciary duty and simple negligence are duplicative because the two claims are legally indistinguishable from each other. Though the claims include some common elements, a claim for breach of fiduciary duty requires the existence of a fiduciary relationship, a breach of that relationship, and damages resulting from the breach.  *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 483 (1998).  In contrast, a claim for negligence does not require the existence of a fiduciary relationship.  It merely requires a showing that the defendant had a legal duty to use reasonable care, breach of that duty, and proximately caused harm.  *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998).  A fiduciary certainly has the duty to exercise due care, but he or she also has the fiduciary duties of loyalty and good faith.  Accordingly, the duty of care and fiduciary duties are distinct concepts.  *See Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995) ("a breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence").  The claims are, therefore, not duplicative.

D.  Gross Negligence

Defendants next argue the FDIC has failed to plead sufficient facts to state a claim of gross negligence.  Gross negligence is "an extreme departure from the ordinary standard of conduct." *City of Santa Barbara v. Sup. Ct.*, 41 Cal. 4th 747, 754 (2007).  To establish gross negligence, the FDIC must show that the defendants failed "to provide even scant care" or engaged in an "extreme departure from the ordinary standard of conduct."  *Wright v. City of Los Angeles*, 219 Cal. App. 3d 318, 343 (1990).

The complaint plausibly demonstrates that defendants' departure from the ordinary standard of conduct was extreme and thus amounted to gross negligence.  *See e.g., FDIC v. Spangler*, 836 F.

United States District Court

For the Northern District of California

1    Supp. 2d 778 (N.D. Ill. 2011) (defendants were held grossly negligence where they repeatedly

2    approved risky loans without sufficient personal guarantees, did not investigate the borrowers' or

3    guarantors' ability to repay the proposed loans, and failed to follow bank loan procedures regarding

4    underwriting requirements).  The FDIC lists seven characteristics of the loans that defendants

5    recommended and approved that it claims show their approval resulted from an extreme departure

6    from the ordinary standard of conduct.  These include violations of SVB's in-house lending limit to

7    Borrower A, relying on deficient or incomplete appraisals, approving loans to Borrower A when he

8    lacked the financial wherewithal to repay the loans, approving loans with insufficient collateral, and

9    relying on out-of-date or inadequate financial statements.  The fact that other members on the BLC

10   participated in the final decision to approve the Loss Transactions does not lessen defendants'

11   responsibility for their failures to abide by the ordinary standard of conduct.  *See Rutherford,* 16 Cal.

12   4th at 969.

13   E.   Simple Negligence

14        Finally, defendants argue that the FDIC cannot bring claims for both simple negligence

15   under California state law and gross negligence under federal law because such dual claims are

16   prohibited by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12

17   U.S.C. § 1821(k).  The statute states in relevant part:

18        A director or officer or an insured depository institution may be held personally
         liable for monetary damages in any civil action by, on behalf of, or at the request or
19       direction of the Corporation . . . acting as conservator or receiver . . . for gross
         negligence, including any similar conduct or conduct that demonstrates a greater
20       disregard of a duty of care (than gross negligence) including intentional tortious
         conduct, as such terms are defined and determined under applicable State law.
21       Nothing in this paragraph shall impair or affect any right of the Corporation under
         other applicable law.
22

23   12 U.S.C. § 1821(k).

24        The Supreme Court has rejected this argument, finding that Congress did not intend to

25   preclude the FDIC from bringing actions premised on negligent breach of the duty of care where it

26   is appropriate under state law.  *Atherton v. FDIC*, 519 U.S. 213, 227 (1997).  FIRREA prohibits

27   only the application of state law to the extent it would act to shield corporate directors and officers

28

1   from any gross negligence claims.  *Id.*  It does not preclude the FDIC from bringing state law claims

2   premised on lesser degrees of culpability.  *Id.*  Accordingly, the FDIC is not barred from bringing its

3   claim for simple negligence under California state law.

4                              V.  REQUESTS FOR JUDICIAL NOTICE

5       In support of its opposition to defendants' motions to dismiss, the FDIC requests that the

6   court take judicial notice of two stipulated Orders of Prohibition issued by the FDIC concerning

7   defendants Melland and Cutting.  (ECF No. 25.)  "As a general rule, a district court may not

8   consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion."  *Lee v. City of Los*

9   *Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation and quotation marks omitted).  A court is,

10  however, entitled to consider (1) documents incorporated into the complaint by reference and (2)

11  matters subject to judicial notice.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

12  (2007).  The existence of these orders is an undisputed fact "capable of accurate and ready

13  determination by resort to sources whose accuracy cannot reasonably be questioned," Fed.R.Evid.

14  201(b).  For this limited purpose, the request for judicial notice is granted as to Exhibits 1 and 2.  It

15  is neither necessary nor appropriate, however, to rely upon those same stipulated orders for the

16  purpose of finding that defendants engaged in misconduct; a "fact" vigorously contested by

17  defendants.  *Cf.* Fed. R. Evid. 201(b) (permitting the court to take judicial notice of "a fact that is

18  not subject to reasonable dispute").

19      The FDIC also requests that the court take judicial notice of three U.S. District Courts orders

20  in unrelated proceedings initiated by the FDIC in its capacity as receiver for other financial

21  institutions.  The existence of these decisions is the proper subject of judicial notice under Fed. R.

22  Evid. 201; the substance of those orders, however, is merely persuasive authority for this court.  The

23  FDIC's request is therefore granted, consistent with this general rule, as is defendants' request for

24  judicial notice of decisions issued by the Superior Court of the County of Sonoma (ECF No. 15).

25                                     VI. CONCLUSION

26      For the forgoing reasons, defendants' motion to dismiss is denied.  Defendants shall file an

27  answer to the complaint within 20 days of the date of this order.

28      IT IS SO ORDERED.

No. 13-CV-03834 RS
ORDER DENYING MOTIONS TO DISMISS

7

*United States District Court*
For the Northern District of California

**United States District Court**
For the Northern District of California

1

2    Dated:  4/9/14

3                                                    RICHARD SEEBORG
                                                     UNITED STATES DISTRICT JUDGE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28